Thank you for being early. You can help us with our schedule later on. Our next case on this morning's docket is Scoggins v. Saddler, et al. We have Mr. Thomas May for the appellant and Mr. Brian Baroff for the appellee. You may proceed, Mr. May. Thank you, Your Honor. Please please the court, counsel. My name is Thomas May and I represent Melinda Scoggins. This is a relatively simple case in a relatively simple procedural posture. As the court is probably well aware, having reviewed the briefing of all parties, this case is a 1983 case centered around the policy and practice of the defendants of following all election actions to recover allegedly overpaid child welfare benefits exclusively in the circuit court of Cook County, i.e. Chicago, without regard to where the recipient of the child welfare benefits applied for the benefits, where they live, or anything whatsoever to do with the case took place, is centered, or where anybody is located. Your Honor, I'm going to tell you, I agree completely with that ridiculous requirement, but we don't have a case pending. This court is for considering a 2-615 motion. That takes the pleadings as true and considers nothing outside the pleading. You're asking me a question about something that's outside the pleading. Sure, but it's a hypothetical. Hypothetically, it doesn't matter. If you look at the Williams v. State Scholarship Commission case, the class that was certified in that case was comprised of two basic elements. One, all persons that the State Scholarship Commission claimed were in default, and two, that that person was not a resident of Cook County. The class definition in the Williams v. State Scholarship Commission case did not say all persons that the State Scholarship Commission had filed a lawsuit against. It didn't say all persons that currently have a case pending against them. The class definition was not all persons that had a default judgment against them. The class definition, again, was all persons that the State Scholarship Commission claimed were in default, and all persons who were not a resident of Cook County. In this case, my client, Ms. Scoggins, is claimed to owe the defendant money, so much so that they actually did file a lawsuit against her in Cook County. Now, Your Honor said that hypothetically, outside the scope of the record, if the case isn't pending, I don't think that matters because if that case was no longer pending, the only reason hypothetically that they would have dismissed it would be to attempt to get around the fact that this case is filed. But even then, they wouldn't have hypothetically dismissed that case with prejudice, which means hypothetically they could file it right back all over again, which again puts us right back in the class definition in Williams. My client is claimed to owe the defendant money, and she's not a resident of Cook County. Now, let me back up. Is it in the record that there is no judgment against her in Cook County? I believe the pleadings state that they've never properly served her. Okay, so there's no judgment. There is no judgment. No damages. There are damages. She had to hire me to proceed with this case, but what we're asking for... How could they collect on a judgment they don't have? Well, what we're asking for is not that a judgment be set aside. We're asking for an injunction against the policy and practice of filing these cases in Cook County, just like Williams v. State Scholarship Commission. But if she's not served, she's not there, and they can't get a judge. But they don't even have to file the lawsuit is what I'm saying. Under the probe case, which is cited in the reply brief, it isn't necessary that debt collectors actually engage in debt collection activities in order to have standing to file a suit. In this case, not only did they undertake to attempt to collect it, they actually filed the lawsuit actually in Cook County, actually at least attempted to serve as a process because my client ended up with a copy of the complaint in summons. Presumably, the defendant didn't file the case in Cook County with the intent to just let it sit there for a few years and involuntarily dismiss it. While they may have not gotten her actually served at that point, they were certainly attempting to do so. And again, hypothetically, it's outside the four corners of the complaint, and we're on a 2615 motion. Any dismissal in the Cook County case would not have been with prejudice. But again, that would go to a summary judgment or a 2619 motion. We're here on a motion to dismiss that the parties stipulate, and the record is quite clear, it's a 615 motion, which only considers the pleadings. And under the pleadings, they filed this lawsuit against her in Cook County, attempting to collect the debt. While they might not have gotten legal service on her, they at least have made the attempt. This case, in reality, should be a summary judgment case for the plaintiff because it is identical in every way to the William E. State Scholarship Commission. There's been no articulation of how their policy or practice is any different than what took place in the William E. State Scholarship Commission. The closest they come to distinguishing the cases is they say, well, in the Williams, there was a statute that fixed him. Well, that's only half true. In Williams, wasn't there a default judgment? I believe there was, yes. But if we waited until a default judgment was entered, then we're going to have to deal with this collateral estoppel or race judicata. So do we try to fight it before a default judgment void is entered, as we did in this case? Or do we wait until a default judgment is entered in a four-on-300-mile, give or take, view from where my client lives, i.e., the same county where Williams lived in Williams v. State Scholarship Commission? Both Williams and this case, the plaintiff lived in Madison County and was sued by the state as part of a uniform policy practice in Williams. There was a statute enacted halfway through the case. But the simple fact of the matter is what we're asking for is injunctive relief under Section 1983. So wouldn't this be advisory in some respects? Absolutely not, because we're asking this court, which ultimately would be the trial court, assuming you remanded it to enforce your mandate, to enjoin the defendant from acting in a specific, concrete, articulatable way, i.e., don't sue any people who don't live in Cook County for collection of allegedly overpaid child welfare benefits outside of their county of residence or where they applied for them. And there's nothing that's going to stop the state from refiling, is there? There's nothing that's going to stop them from refiling it. We're asking you to stop them from refiling in a specific place. If they want to refile in Madison County, where my client lives, where she applied for the welfare benefits, where she received the welfare benefits, certainly we're not asking you to enjoin that. This is a case where, in Cook County, my client is being deprived of meaningful access to the courts, just as in the Williams v. State Scholarship Commission, which our Supreme Court upheld an injunction against the State Scholarship Commission for doing exactly what the state does in this case. So the fact that we're not asking for dollar relief, except for costs of attorney's fees under Section 1988, which is a corollary to Section 1983, the substantive relief we're asking for is actual injunctive relief. We're not asking for an advisory opinion. We're not asking for a suggestion. We want definitive, concrete relief that can be enforced through the contempt power of the state violence. So you're making no distinction between a suit to recover child care versus a suit to enforce student loans? Whether it's to recover child care, whether it's student loans, whether it's some tort that took place in Madison County, whether it's a contract that was entered into in Madison County for something, the simple fact of the matter is my client is a poor person. She receives child welfare benefits. Well-off people do not receive child welfare benefits. They filed suit against her in what is probably one of the farthest away jurisdictions in the state of Illinois, where they filed all of their collection actions as pled in the case. If you look in the record, there was attached with some of the pleadings printouts from the circuit clerk of Cook County, which, near as I can tell, every single one of these cases is either voluntarily dismissed by the state or obtains a default judgment. I'm not saying there's no cases that have been litigated on the merits, but I couldn't find one in my quick review and what's attached to the record in the record in this case. And, of course, that's outside the scope of the pleadings, but it does substantiate the pleadings, the simple fact that the people they're suing cannot get to Chicago to defend this case. I mean, it's difficult for downstate lawyers without a local counsel to litigate in Chicago. Does this – do you think the next step down the road is Chicago parking tickets? Well, at least with Chicago parking tickets, there's an allegation that the person receiving the tickets would have been in Chicago. I understand the question you're asking, and oftentimes that's not actually true. But then it would be the Secretary of State that would be enjoined from taking your license based on a failure to pay a parking ticket or something. That's the threat. That's the threat anyway. But like I was saying, at least in the Chicago parking ticket analogy, there is some allegation that the person who received the parking ticket actually went to Chicago. In this case, the allegation is my client has never even been to Cook County in her entire life. Isn't the allegation that they paid her in Cook County? I'd have to see the pleadings. No, there is no allegation that she received child welfare benefits in Cook County. In fact, the opposite is true. In the complaint filed in this case, the allegation is that she applied for and received child welfare benefits in Madison County. Okay. It is in there. It is in there. Okay. I have seen that part. And I don't believe I've seen anything where anybody has alleged that she received the welfare benefits in Cook County. Now, I recognize in the Williams case there was an argument made to the Supreme Court that the student scholarship applications were partially processed in Cook County. But even if that were true in this case, which I've seen no allegation or evidence of, our Supreme Court found that to be inadequate for purposes of filing cases in Cook County and upheld the injunction against filing those cases in Cook County. So what I'm asking your honors to do is to reverse the trial court's dismissal on a 615 motion. I'm not asking you, your honors, to enter an injunction. I'm just asking your honors to reverse the 615 motion so that the case can proceed on the merits of the lower court and we can find out what the truth is. All we have right now is plaintiff's complaint and a 615 dismissal based on the erroneous assumption by the trial court that this defendant could file this case wherever they wanted and that they did nothing wrong. Bless your honors. Any other questions? Thank you. Thank you. We'll have the opportunity to rebut. Mr. Barrow? Thank you, your honors. Brian Barrow, Assistant Attorney General, Department of Human Services, the Director. I just want to make one point about this child care program just to clear up the confusion in this case. This is a program that supports working people, working parents. It isn't necessarily something that applies necessarily only to indigents. It can be applied to indigents, but it also applies to working parents to help support them while they're working. So the question of plaintiff's indigency I think is an open question in this case. There's been no allegation that she's indigent. But I just want to put that aside just to make it clear what this program is about. I also want to start with discussing the merits of the case, and I understand. I agree that there is no case here. There is no justiciable claim here, and I recognize that issues of justiciability are generally threshold issues. But there's a sort of overlap between, I think, our justiciability, rightness, standing arguments, and our merits arguments. And I know the circuit court dismissed the claim on the merits, so I think that's probably a good place to start this case. The Williams case on which this entire claim is based, which found a due process deprivation and a deprivation of the right of access to the court, is predicated on agency action of bringing a collection of action to Cook County. That was enforced both by a contract, because there was a foreign collection clause in the contract, which is not present here, and there's also a state statute. So you agree that Williams is distinguishable based upon what you just said? Yes, correct. Okay. There was a contract. And in addition, there was a state statute. So effectively, the plaintiffs who were seeking to challenge the collection of actions under the student loan agreements had no alternative but to sue in Cook County. If they were in Edgar County or Madison County or whatever, under the contract they signed with the state and under the state statute, the only forum, the only venue forum they had was in Cook County. And because they were indigent, that was the hardship. That was such a hardship on them that the court decided this rose to a due process problem. Here, there's no similar allegations. The child care application that the recipient of child care benefit signs does not contain any forum selection clause or venue waiver clause or anything like that. There is no state statute that requires venues to be set in Cook County. The only operative venue statute here comes within the civil code. And the civil code, as we know, sets venue in the state, in the county where the defendant resides or where a part of the transaction occurs. But under Section 2-104 of the civil code, there's a simple mechanism for seeking a change of venue if venue is filed in the wrong county. Under 2 Section 104, a plaintiff may move for change of venue on or before the date they're required to appear or with any further time may be granted to answer in respect to the complaint. This is a statute that's, I think, fairly liberally applied. Now, in this particular case, you have a plaintiff who alleges that she's never been served, properly served in this case. She's never appeared in the Cook County collection of action. Nothing in the DHS practice or the DHS's conduct or the state statute or the contract, the application with the plaintiff, bars the plaintiff from obtaining a change of venue in Cook County. On that ground alone, Williams is distinguishable from the present case. And let me just talk a little bit about the circuit court's decision. So if you refile, you're saying that she could file a motion to transfer it to Madison County? Yes. A form of nonconvenience. Not a form of nonconvenience. Under 2-104, she has a right to seek a change of venue before she's answered or otherwise pled. Or the provision itself gives, of course, the discretion to extend the time to file the venue. So it's a liberal provision of the code. All right. I agree with that. Let me ask you this. So you cannot dispute that she's incurred some damages? I don't know. That means she had to hire a lawyer. Okay. You're here. Okay. Well, she hired a lawyer to prosecute the civil rights. She hasn't hired a lawyer yet to seek a change of venue. Now, I mean, that may be a matter of inconvenience to her. But remember, what we're talking about is a due process violation. I understand you're addressing the standing, but there's a due process deprivation that she's complaining about. It's not to be free from filing a suit. It's not to be free from even being filed suit in the wrong county. People file suits in the wrong counties all the time. And if that were the case, every common venue provision becomes a civil rights violation. The due process right she's claiming is not to be barred from changing venue to the proper county. It's an exercise of the right to change venue. Now, the question, though, becomes is would she have to hire a lawyer to change venue? Perhaps. And there are legal services that exist. So I don't know that she's, you know, the harm of, I don't know if the harm of hiring a lawyer necessarily gives her a standing option in this case. Because, again, there's nothing, you know, there's, again, this is where there's sort of the merits of the standing operation overlap. The Department of Human Services has done nothing to prevent her from seeking to change venue. Nothing. Now, they may have filed a suit in the wrong county, but nobody stopped her from seeking to change venue to the right county. And that's where the harm would occur. That's where the due process violations occur. And that's where I think she lacks standing to sue the Department of Human Services in this case or where the complaint requires the case is not right. Because there's nothing the Department has done that has prevented her from seeking to change venue in this lawsuit. And, again, there's nothing. Likewise, on the right is Connie Daniels. There's nothing that she has alleged that prevents her from seeking to change venue. So there's no imminent harm of having to defend herself in a disinformed because she hasn't even been served yet in this case. So, and I think the Pura case, I think, that the plaintiff relies on primarily is distinguished because at least at that point, there's the invasion of a cognizable contractual interest there. There was what? I'm sorry? There's an argument of a cognizable interest. There's a contract that they were claiming all state alleged violation of the contract. And here, there's no contract. There's no statute. There's no allegation to a violation of anything that, I mean, there's no allegations that we've somehow violated 2-1 before to prevent her, to prevent the plaintiff from seeking to change venue. For that reason, this case is, I think. Well, in Pura, which is exactly what you just said, there was no lawsuit filed against a person. No collection action has been filed. Right. So why is that distinguishable? Because the plaintiff in Pura had a contract with all states to defend them, to indemnify them against these underpayments of medical care. And here, I think the distinguishing characteristic, I think the distinguishing characteristic is there is no contract here. There is no statute. There's no legal right she has to, there's no legal right that's invaded. If the department had done something to prevent her from filing a change of venue, then I think maybe Pura would be on point. But because it isn't, I think it is not. And again, I recognize that there's certain overlap here with the merits of this case because for the same reason she hasn't filed a clause of action. Under Williams, the Williams rights are distinguishable in this case. So we would just ask that the circuit court's decision be affirmed. In case the court has any other questions in this case. I don't think so. Mr. Mayne, do you have a rebuttal? Very briefly. I think counsel and I are in agreement on one thing. And that is my client could not have filed a forum nonconvenience motion in the underlying case because venue wouldn't have been proper in Cook County in the first place. And it's well established you can't file a forum nonconvenience motion if the originating venue was not proper in the first place. As far as whether or not my client could have filed a motion to transfer venue, that identical argument was taken up by our Supreme Court and Williams v. State Scholarship Commission. As they noted, and it's true in this case as well, there is no record, there's no record of evidence in the record in that case. And there's nothing in the record in this case to indicate that a motion to transfer venue in one of those cases in Williams or in one of these cases. But he's conceded that Williams was controlled by a statute and there is no such statute here. When Williams was originally filed, there was no statute. Midway through the Williams lawsuit, our General Assembly passed a statute to try to kill off a Williams case. And the plaintiffs in Williams amended to then attack the statute. But the original Williams lawsuit, there was no statute. But whether there's a statute or not, the United States Supreme Court in Monel, which is cited in the brief, says you can file a 1983 case such as this to attack an unofficial policy or custom, whether or not it's a formal statute or a formal enactment with formal approval from the formal policymaking persons. In this case, there is no dispute that I'm aware of that there is this policy, which may not have been approved of by the General Assembly, may not have been approved of by the governor or any of the official powers that be, but it exists nonetheless. And that policy and practice is to file every single one of these cases in Foote County with route regard to where the recipient of the aid lives, where any part of the transaction took place, closing the classic Monel liability. The state has conceded, I think you heard, that if this is refiled against her, she can move to have it transferred to Madison County. I believe that's what I heard. I believe that's what you heard. Okay. So what do we do if we remand on 2615? What's going to happen? What we would seek to have happen is that, obviously, the defendant be ordered to file an answer. There will have to be some discovery, and probably we have cross motions for summary judgment and or injunctions be issued. And we would ask that the trial court ultimately enter an injunction permanently barring the defendant from refiling this case, not anywhere, but specifically in Foote County or any county other than where the benefits were applied for or where the recipient lived. In this case, they could refile this case in Madison County. Our Supreme Court in Williams found that the fact that they could have theoretically moved for a venue transfer was inadequate protection in affirming the permanent injunction entered by the circuit court in Madison County in Williams. So, yes, that's out there, but our Supreme Court says that's not adequate. And I would ask that Your Honor review the Williams case, and you'll see exactly what I'm representing to you is how it so holds. And it further goes on to analyze on the alternative basis whether a forum nonconvenience motion could have been filed. But I think the parties in this case are in agreement that no forum nonconvenience motion could have been filed. I think we've both made that representation here at oral argument today. So unless Your Honor has any further questions. Thank you very much. Thank you. Thank you both for your brief arguments.